**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DANIEL ANDRADE, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br>**-against-**<br><br>**MANHATTAN PAINTING & DECORATING CORP., IGBALE ERBELI, individually, and ARGJENT ERBELI, individually,**<br><br>**Defendants.** | **Case No. 25-CV-6540**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Daniel Andrade ("Plaintiff" or "Andrade"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover agreed upon wages, underpayment caused by failure to pay overtime compensation and other damages for Plaintiff and similarly situated non-exempt workers, such as painters, sprayers, and laborers (collectively, "Non-Exempt Workers") who work or have worked for Manhattan Painting & Decorating Corp. ("Manhattan Painting"), Igbale Erbeli ("Igbale"), and Argjent Erbeli ("Argjent") (collectively, "Defendants").

2. Manhattan Painting is a painting and wall covering company in New York that offers painting and other renovative services.

3. During the relevant time period, Manhattan Painting has been owned and operated by Igbale and Argjent.

4. Manhattan Painting has worked with several leading general contractors and construction management companies including Structure Tone and JY Magen & Company[1] and works on projects for various companies such as Facebook, Disney, Deutsche Bank, and Ross.

5. Manhattan Painting's principal executive office is located at 321 West 44th Street, Ste 508, New York, New York 10036.

6. In order to provide services to its customers, Defendants employed Plaintiff and other Non-Exempt Workers. Despite being non-exempt employees paid on an hourly basis, Defendants failed to pay Plaintiff and other Non-Exempt Workers overtime compensation at the rate of one and one half their regular rate of pay for all hours worked over forty in any given workweek.

7. In that regard, Defendants paid Plaintiff or other Non-Exempt Workers an arbitrary number of hours less than 40 on a paystub at their assigned hourly rate of pay and also paid them a flat sum of $200 per additional shifts worked.

8. Thus, Defendants did not pay 1.5 times Plaintiff and Non-Exempt Workers' regular rates of pay for all hours worked over 40 in a workweek.

9. Defendants also failed to provide Plaintiff and all other similarly situated Non-Exempt Workers with time of hire notices as required by NYLL § 195(1).

10. Specifically, receiving a time of hire notice would have informed Plaintiff and Non-Exempt Workers of their different rates of pay, whether they were to be paid per shift or per hour, and their pay day.

11. Defendants' failure to provide Plaintiff and Non-Exempt Workers with a time of hire notice kept them uninformed depriving them the ability to contest the pay provided by Defendants, deprived them of timely compensation for all payments, and allowed Defendants to

---

[1] *See* Association of Master Painters & Decorators spotlights Manhattan Painting, New York Real Estate Journal (April 22, 2013) https://nyrej.com/association-of-master-painters-decorators-spotlights-manhattan-painting.

hide their wrong-doing.

12. As a result, Defendants were able to conceal their pay violations and Plaintiff and Non-Exempt Workers were incapable to contest or take action to correct Defendants' wage and hour violations.

13. Accordingly, Plaintiff and Non-Exempt Workers are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide the statutorily required notice, up to a total of five thousand dollars each pursuant to NYLL § 198(1-d).

14. Defendants similarly failed to provide Plaintiff and all other similarly situated Non-Exempt Workers with accurate statements of wages pursuant to NYLL § 195(3), as Plaintiff's wage statement failed to show all of the regular hours he worked, any overtime hours he worked, and his overtime rate of pay. ***See* Exhibit A.**

15. Plaintiff relied on his paystubs to ensure that Defendants paid him the correct rate of pay and for all of his hours worked.

16. Due to Defendants' failure to provide the correct number of hours worked on the wage statements provided to Plaintiff and similarly situated Non-Exempt Workers, Plaintiff and Non-Exempt Workers were misinformed about the correct number of hours they worked and their rates of pay, thus they were deprived of the information necessary for them to assess whether they were being paid correctly. As a result, Defendants were able to hide their pay violations and Plaintiff and other Non-Exempt Workers were underpaid and suffered an economic injury.

17. Defendants' incorrect wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiff's and Non-Exempt Workers' awareness that they were being underpaid.

18. Had Plaintiff and Non-Exempt Workers been able to see that they were not being

lawfully paid via their wage statements, they would have been able to avoid underpayment of their wages. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (plaintiff establishes concrete harm if plaintiff can show he "would have avoided some actual harm or obtained some actual benefit if accurate [statements] had been provided"); *see also Van Duser v. Tozzer Ltd.*, No. 23 Civ. 9329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024).

19. Plaintiff and Non-Exempt Workers' inability to crosscheck their wage statements constitutes concrete harm.

20. Accordingly, Plaintiff and Non-Exempt Workers are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(3).

21. Plaintiff brings this action on behalf of himself and similarly situated current and former Non-Exempt Workers who elect to opt in to this action pursuant to the FLSA, specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated Non-Exempt Workers of their lawfully earned wages.

22. Plaintiff brings this action on behalf of himself and similarly situated current and former Non-Exempt Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

23. As will be explained in more detail below, Plaintiff also brings claims against Defendants for retaliation in accordance with the FLSA, 29 U.S.C. § 215(a)(3) and NYLL § 215(1)(a). In sum, Plaintiff repeatedly complained to Defendants that he was not being properly compensated for all the hours he worked and not being paid the appropriate overtime wages. As a

result, in retaliation for Plaintiff's repeated complaints, Defendants abruptly terminated Plaintiff's employment.

## THE PARTIES

### Plaintiff

**Daniel Andrade**

24. Andrade is an adult individual who is a resident of New Rochelle, New York.

25. Andrade was employed by Defendants as a painter and sprayer from approximately May 2021 through March 19, 2024.

26. Andrade is a covered employee within the meaning of the FLSA and the NYLL.

27. A written consent for Andrade is being filed with this Class Action Complaint.

### Defendants

28. Defendants jointly employed Plaintiff and similarly situated Non-Exempt Workers at all times relevant.

29. Defendants have substantial control over Plaintiff and Non-Exempt Workers working conditions, and over the unlawful policies and practices alleged herein.

30. During all relevant times, Defendants' operation is interrelated and unified.

31. During all relevant times, Manhattan Painting shared common management and was centrally controlled and/or owned by Defendants.

32. During all relevant times, Defendants have applied the same employment policies, practices, and procedures to Plaintiff and Non-Exempt Workers.

33. During all relevant times, Defendants have controlled the labor relations of Manhattan Painting.

34. During all relevant times, Defendants have been Plaintiff's and Non-Exempt

Workers' employers within the meaning of the FLSA and NYLL.

**Manhattan Painting & Decorating Corp.**

35. Manhattan Painting is a Domestic Business Corporation organized and existing under the laws of New York. It lists its principal executive office as 321 West 44th Street, Ste 508, New York, New York 10036.

36. Manhattan Painting was and is a covered employer within the meaning of the FLSA and the NYLL.

37. Manhattan Painting has maintained control, oversight, and direction over Plaintiff and Non-Exempt Workers, including timekeeping, payroll, and other employment practices applicable. Specifically, Manhattan Painting & Decorating Corp. is listed as the corporate payor on Plaintiff's pay stubs.

38. Manhattan Painting applies the same employment policies, practices, and procedures to all Non-Exempt Workers, including policies, practices, and procedures with respect to payment of wages.

39. Upon information and belief, at all relevant times, Manhattan Painting has had an annual gross volume of sales in excess of $500,000.

40. At all times relevant, Defendants have employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Igbale Erbeli**

41. Upon information and belief, Igbale is a resident of the State of New York.

42. At all relevant times herein, Igbale has owned and operated Manhattan Painting.

43. At all relevant times, Igbale has maintained a direct and significant management role at Manhattan Painting.

44. At all relevant times, Igbale has been actively involved in managing the day-to-day operations of Manhattan Painting.

45. At all relevant times, Igbale was at Manhattan Painting on a regular basis.

46. At all relevant times, Igbale makes determinations regarding the hiring and firing of employees.

47. The New York State Department of State identifies Igbale as the CEO of Manhattan Painting.

48. At all relevant times, Igbale has had the power to stop any illegal pay practices that harmed Plaintiff and Non-Exempt Workers.

49. At all relevant times, Igbale has had the power to transfer the assets and/or liabilities of Manhattan Painting.

50. At all relevant times, Igbale has had the power the declare bankruptcy on behalf of Manhattan Painting.

51. At all relevant times, Igbale has had the power to enter into contracts on behalf of Manhattan Painting.

52. At all relevant times, Igbale has had the power to close, shut down, and/or sell Manhattan Painting.

53. Igbale is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiff or Non-Exempt Workers.

**Argjent Erbeli**

54. Upon information and belief, Argjent is a resident of the State of New Jersey.

55. At all relevant times herein, Argjent has owned and operated Manhattan Painting.

56. At all relevant times, Argjent has maintained a direct and significant management

role at Manhattan Painting.

57. At all relevant times, Argjent has been actively involved in managing the day-to-day operations of Manhattan Painting.

58. At all relevant times, Argjent was at Manhattan Painting and visited its job sites on a regular basis.

59. At all relevant times, Argjent assigned Plaintiff to specific jobs and requested updates from Plaintiff.

60. At all relevant times, Argjent provided Plaintiff with some payments.

61. At all relevant times, Argjent makes determinations regarding the hiring and firing of employees.

62. At all relevant times, Argjent has had the power to stop any illegal pay practices that harmed Plaintiff and Non-Exempt Workers.

63. At all relevant times, Argjent has had the power to transfer the assets and/or liabilities of Manhattan Painting.

64. At all relevant times, Argjent has had the power the declare bankruptcy on behalf of Manhattan Painting.

65. At all relevant times, Argjent has had the power to enter into contracts on behalf of Manhattan Painting.

66. At all relevant times, Argjent has had the power to close, shut down, and/or sell Manhattan Painting.

67. Argjent is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiff or Non-Exempt Workers.

## JURISDICTION AND VENUE

68. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiff and Defendants' state law claims pursuant to 28 U.S.C. § 1367.

69. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

70. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COLLECTIVE ACTION ALLEGATIONS

71. Plaintiff brings the First Cause of Action, FLSA claim, on behalf of:

> All current and former Non-Exempt Workers employed by Manhattan Painting between August 8, 2022 and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

72. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective for their overtime compensation owed.

73. Consistent with Defendants' policies, patterns, or practices, Plaintiff and the FLSA Collective were not paid the appropriate premium overtime compensation for all hours worked beyond 40 per workweek.

74. All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

75. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. Defendants intentionally did not report the overtime hours

Plaintiff and the FLSA Collective worked on their wage statements so they could pay at a rate that fell below time and one half the regular rate. Accordingly, this policy and pattern or practice includes, but is not limited to:

a. willfully failing to pay its employees, including Plaintiff and the FLSA Collective, the correct overtime wages for all hours worked in excess of 40 hours in a workweek; and

b. willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective, have worked for the benefit of Defendants.

76. An employer "willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *See Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

77. According to *Whiteside v Hover-Davis*, "a claim is facially plausible 'when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *See* 995 F.3d 315, 323 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For a Plaintiffs to nudge their claim 'across the line from conceivable to plausible,' [they] must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *See Id.* (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1995)).

78. Defendants' willful violation of the FLSA is evidenced by the clear nature of the violation – it is without question illegal to deny employees their overtime compensation. Additionally, Defendants intentionally set up this payment scheme to avoid detection of their underpayments of overtime.

79. Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant

to a corporate policy or practice of minimizing labor costs by not paying time and a half the regular rate of pay for all overtime hours worked.

80. Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the FLSA Collective overtime premiums for hours worked in excess of 40 hours per week.

81. Defendants' unlawful conduct has been widespread, repeated, and consistent.

82. Defendants failed to undertake any diligent review of its wage and hour practices relating to Non-Exempt Workers.

83. Defendants did not consult with counsel regarding their wage and hour practices relating to Non-Exempt Workers.

84. As a result, Defendants acted willful due to their reckless disregard of their conduct.

## NEW YORK CLASS ACTION ALLEGATIONS

85. Plaintiff brings the Second, Third, and Fourth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the class of persons consisting of:

> All current and former Non-Exempt Workers at Manhattan Painting between December 23, 2017[2] and the date of the final judgment in this matter (the "NYLL Class").

86. The members of the NYLL Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

87. There are more than fifty members of the NYLL Class.

---

[2] This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

88. Plaintiff's claims are typical of those claims that could be alleged by any member of the NYLL Class, and the relief sought is typical of the relief which would be sought by each NYLL Class member in separate actions.

89. Plaintiff and the NYLL Class have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all of the NYLL Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the NYLL Class.

90. Plaintiff is able to fairly and adequately protect the interests of the NYLL Class and has no interests antagonistic to the NYLL Class members.

91. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

92. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

93. Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and/or each member of the NYLL Class individually and include, but are not limited to, the following:

(a) Whether Defendants correctly compensated Plaintiff and the NYLL Class at time and one half their regular rate of pay for hours worked in excess of 40 per workweek;

(b) Whether Defendants failed to furnish Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by the NYLL;

(c) Whether Defendants failed to furnish Plaintiff and the NYLL Class with accurate statements with every payment of wages, as required by the NYLL; and

(d) Whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the NYLL Class, and other records required by the NYLL.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

94. Andrade was employed by Manhattan Painting as a painter and sprayer from approximately May 2021 to March 19, 2024.

95. Andrade worked and performed his job duties exclusively in Manhattan, New York.

96. Beginning in 2022[3], unless he missed time for vacation, sick days, or holidays, or obtained additional shifts, Andrade generally worked five to seven days a week from approximately 7:00 a.m. or 8:00 a.m. to 2:30 p.m. In addition to this regular schedule, during 2022 Andrade also worked night shifts approximately twice. These night shifts began at 2:30 p.m. and ended at approximately 10:00 p.m. However, Plaintiff occasionally worked past 10:00 p.m. until approximately 12:00 a.m. or 2:00 a.m. the next day.

97. In 2023, Andrade began working these night shifts approximately five to seven times a week in addition to his regular schedule that started at approximately 7:00 a.m. or 8:00 a.m. to 2:30 p.m. five to seven days a week.

98. Thus, Andrade routinely worked between 50 to 64 hours per week in 2022, and between 72.5 up to approximately 101.5 hours per week during 2023 and 2024.

[3] Plaintiff does not allege that he worked over 40 hours in a work week during 2021.

99. Andrade was paid at an hourly rate of $34.40, $43.00, or $46.00 depending on the type of work he performed. In addition to his regular rate, Defendants also paid Andrade $200 flat per additional shift which equated to $26.67 per hour or less if his shift ran longer than expected, which is substantially less than his expected overtime rate of pay.

100. At all times relevant, Andrade was entitled to receive time and one-half his regular rate of pay for all hours worked beyond 40 per workweek. However, Andrade did not receive overtime pay at time and one half his regular rate for the hours he worked over 40 in a workweek.

101. Defendants did not pay Andrade overtime wages for all of the time that he suffered and was required to work each workweek

102. Defendants did not keep accurate records of wages earned or of hours worked by Andrade.

103. Defendants failed to furnish Andrade with a time of hire notice, as required by the NYLL.

104. Due to Defendants' failure to provide a proper time of hire notice, Andrade was misinformed about his correct rate and method of compensation.

105. Defendants intentionally failed to provide Andrade with a time of hire notice so that they could continue to violate the law and underpay Andrade. Since Andrade was deprived of the necessary information, he was unable to assess his rate of pay and method of compensation to accurately calculate if he was being paid properly. As a result, Andrade suffered an economic injury due to Defendants' failure to provide Andrade with information regarding his pay structure.

106. Defendants also failed to furnish Andrade with an accurate statement of wages with each payment of wages as required by the NYLL. Andrade's wage statements did not include the correct number of hours worked, any hours worked over 40 in a workweek, or his overtime rate of

pay.

107. Defendants intentionally omitted this information from Andrade's wage statements so that they could continue to perpetrate this violation of law and underpay Andrade. Since Andrade was deprived of the necessary information, he was unable to assess his hours and wages to accurately determine the amount he was being underpaid. As a result, Andrade suffered an economic injury as a result of Defendants' intentional omissions.

108. In or around April 2023 or May 2023, Andrade complained to Defendants that he was working past 10:00 p.m. and working more than what the shifts were scheduled for without being properly compensated and not getting paid at the overtime rate of pay.

109. In or around October 2023, Andrade again complained to Defendants that the policy of paying a flat rate of $200 per shifts was unfair and he needed to be paid at the proper overtime rate of pay.

110. Later in October 2023, Andrade complained to Argjent that he was working late hours and sometimes ending his workday between 12:00 a.m. and 2:00 a.m. Andrade again complained that he needed to be paid at the proper overtime rate instead of receiving a flat rate per shift.

111. In response, Argjent threatened to terminate Andrade if he did not do what he was asked.

112. Consequently, based on this threat and Defendants ongoing unlawful payments to Andrade, Andrade refrained from making further complaints.

113. As a consequence of Andrade's continued displeasure with Defendants' illegal pay practices, in or around early March 2024, Andrade complained to Argjent that he no longer wanted to work over 40 hours in a week unless Defendants reported all the hours he worked on his paystub

and paid him at the proper overtime rate of pay.

114. Despite performing his job duties satisfactorily for approximately three years, on March 19, 2024, in retaliation for Andrade's repeated complaints, Defendants abruptly removed him from the schedule.

115. That same day Andrade complained to his union representative that he was being retaliated against and the following day made a report at the union hall.

116. Defendants negatively affected Andrade's employment as a direct response to his complaints.

117. Defendants terminated Andrade's employment due to his protected activity of complaining about owed wages.

118. Any of Defendants' non-discriminatory reasons for termination are pre-text.

119. Due to Defendants' retaliation, Andrade suffered damages, including being out of work, embarrassment, and emotional distress.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

120. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

121. At all times relevant, Plaintiff and the FLSA Collective were, are, or have been employees, and Defendants were, are, or have been employers of Plaintiff and the FLSA Collective, within the meaning of 29 U.S.C §§ 201 et seq.

122. At all times relevant, Defendants have been employers of Plaintiff and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 et seq.

123. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of FLSA Collective.

124. Plaintiff and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

125. Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

126. Defendant's violations of the FLSA have been knowing, willful, and in reckless disregard of the FLSA's overtime requirements.

127. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

**SECOND CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the NYLL Class)**

128. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

129. At all times relevant, Plaintiff and the NYLL Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the NYLL Class within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

130. The overtime wage provisions of Article 19 of the NYLL and its supporting

regulations apply to Defendants and protect Plaintiff and the NYLL Class.

131. Defendants failed to pay Plaintiff and the NYLL Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate – for all hours worked beyond 40 per workweek.

132. Thus, Defendants have violated the NYLL's overtime requirements of the NYLL.

133. Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiff and the NYLL Class)**

134. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

135. Defendants have failed to supply Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring and at subsequent wage changes, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

136. Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the NYLL Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the NYLL Class)**

137. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

138. Defendants failed to supply Plaintiff and the NYLL Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

139. Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the NYLL Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

**FIFTH CAUSE OF ACTION**
**Fair Labor Standards Act – Retaliation**
**(Brought on behalf of Plaintiff individually)**

140. Plaintiff realleges and incorporates by reference all allegations in all preceding

paragraphs.

141. Plaintiff engaged in protected activity by repeatedly complaining to Defendants of their wage and hour practices that are unlawful under the FLSA.

142. Plaintiff suffered an adverse employment action – termination – due to his participation in this protected activity.

143. Upon information and belief, in response to Plaintiff's complaints Defendants terminated Plaintiff's employment.

144. At all times relevant, Plaintiff was qualified for his job and performed his work in a reasonably sufficient manner.

145. Defendants' actions were done to punish Plaintiff and/or to otherwise interfere with his attempt to vindicate his rights under the FLSA.

146. Defendants' actions constitute retaliation in violation of 29 U.S.C. § 216(b) and 29 U.S.C. § 215(a)(3) and has made Plaintiff suffer damages, including loss of wages, emotional distress and embarrassment.

147. Due to Defendants' violation of the FLSA § 215 and §216, Plaintiff is entitled to an award including lost wages, liquidated damages, emotional distress damages, and punitive damages, along with reasonable attorneys' fees and costs.

**<u>SIXTH CAUSE OF ACTION</u>**
**New York Labor Law – Retaliation**
**(Brought on behalf of Plaintiff individually)**

148. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

149. Plaintiff engaged in protected activity by repeatedly complaining to Defendants of their wage and hour practices that are unlawful under the NYLL.

150. Plaintiff suffered an adverse employment action – termination – due to his participation in this protected activity.

151. Upon information and belief, in response to Plaintiff's complaints Defendants terminated Plaintiff's employment.

152. At all times relevant, Plaintiff was qualified for his job and performed his work in a reasonably sufficient manner.

153. Defendants' actions were done in order to punish Plaintiff and/or to otherwise interfere with his attempt to vindicate his rights under the NYLL. Defendants' actions constitute retaliation in violation of NYLL § 215 and have made Plaintiff suffer damages, including loss of wages, emotional distress and embarrassment.

154. Due to Defendants' violation of the NYLL § 215, Plaintiff is entitled to an award of lost wages, liquidated damages, emotional distress damages, and punitive damages, along with reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Non-Exempt Workers who are presently, or have at any time between August 8, 2022 and through and including the date of this Court's issuance of court-supervised notice, worked for Manhattan Painting. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid overtime wages, and an additional and equal amount as liquidated

damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiff as representative of the NYLL Class and counsel of record as Class Counsel;

E. Unpaid agreed upon wages, overtime wages, other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F. Liquidated damages permitted by law pursuant to the NYLL;

G. Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the NYLL Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

H. Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff and the NYLL Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article § 198;

I. Back pay, front pay, compensatory damages, punitive damages, liquidated damages, and attorneys' fees for Plaintiff pursuant to 29 U.S.C. § 215(a)(3) and NYLL § 215(1)(a);

J. Prejudgment and post-judgment interest;

K. Reasonable attorneys' fees and costs of the action; and

L. Such other relief as this Court shall deem just and proper.

Dated: New York, New York
August 8, 2025

Respectfully submitted,

*/s/ Brian S. Schaffer*
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Katherine Bonilla
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the Putative Class*

FAIR LABOR STANDARDS ACT CONSENT

1. I consent to be a party plaintiff in a lawsuit against MANHATTAN PAINTING AND DECORATING and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2. By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

Daniel Andrade (Jun 17, 2024 11:06 EDT)

Signature

Daniel Andrade

Full Legal Name (Print)