**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

DANIEL ANDRADE, individually and on behalf of
all others similarly situated,

                                    Plaintiff,

          -against-

MANHATTAN PAINTING & DECORATING CORP.,
IGBAL ERBELI, individually, and ARGJENT
ERBELI, individually,

                                    Defendants.

-----------------------------------------------------------------x

Civil Action No.
**25-CV-06540 (MKV)**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL**
**ARBITRATION AND STAY PROCEEDINGS PENDING INDIVIDUAL ARBITRATION**

**A.Y. STRAUSS LLC**
535 Fifth Avenue, Fourth Floor
New York, NY 10017
Tel.: (646) 374-0255
*Attorneys for Defendants*

Ross A. Fox, Esq.
Of Counsel and on the Brief

Ira M. Saxe, Esq.
Anthony J. Crasto, Esq.
On the Brief

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT.................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

LEGAL ARGUMENT ........................................................................................................... 5

      I.      THE FEDERAL ARBITRATION ACT MANDATES THIS COURT TO
            COMPEL ARBITRATION ...................................................................................... 5

      II.     PLAINTIFF MUST RESOLVE HIS CLAIMS THROUGH INDIVIDUAL
            ARBITRATION ....................................................................................................... 7

            A.      The Parties Intended to Arbitrate the Claims ............................................... 7

            B.      The Scope of the Arbitration Agreement Plainly Encompasses Plaintiff's
                    Claims .......................................................................................................... 8

            C.      All of Plaintiff's Claims are Arbitrable and the Complaint Should be
                    Compelled to Arbitration .......................................................................... 11

      III.    PLAINTIFF'S CLASS AND COLLECTIVE ACTION CLAIMS CANNOT
            PROCEED .......................................................................................................... 11

CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett*,
  556 U.S. 247 (2009)..................................................................................................9

*Abdullayeva v. Attending Homecare Servs. LLC*,
  928 F.3d 218 (2d Cir. 2019)............................................................................. *passim*

*Alderman v. 21 Club Inc.*,
  733 F. Supp. 2d 461 (S.D.N.Y. 2010)......................................................................9

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)..................................................................................................6

*AT&T Mobility, LLC v. Concepcion*,
  563 U.S. 333 (2011)..................................................................................................5

*Breed v Insurance Co. of N. Am.*,
  46 N.Y.2d 351 (1978), *rearg denied*, 46 N.Y.2d 940 (1979) ..................................8

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003)....................................................................................................6

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995)..........................................................................................6

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*,
  923 F.2d 245 (2d Cir. 1991)......................................................................................6

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)..................................................................................................6

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018)..................................................................................................9

*Fernandez v. Windmill Distrib. Co.*,
  159 F. Supp. 3d 351 (S.D.N.Y. 2016).......................................................................9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000)....................................................................................................6

*Greenfield v. Philles Records, Inc.*,
  98 N.Y.2d 562 (2002).............................................................................................7, 8

*Lawrence v. Sol G. Atlas Realty Co.*,
 841 F.3d 81 (2d Cir. 2016) ...................................................................................9, 11

*M & G Polymers USA, LLC v. Tackett*,
 574 U.S. 427 (2015) ..................................................................................................7

*Mastrobuono v. Shearson Lehman Hutton*,
 514 U.S. 52 (1995) ..................................................................................................11

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*,
 858 F.2d 825 (2d Cir. 1988) .....................................................................................7

*Metro. Edison Co. v. N.L.R.B.*,
 460 U.S. 693 (1983) ..................................................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) ......................................................................................................8

*Nicosia v. Amazon.com, Inc.*,
 834 F.3d 220 (2d Cir. 2016) .....................................................................................7

*Pena v. 220 E. 197 Realty LLC*,
 No. 20-CV-7039 (JPO), 2021 WL 3146031 (S.D.N.Y. July 23, 2021) ....................7

*Sanchez v. Clipper Realty, Inc.*,
 638 F. Supp. 3d 357 (S.D.N.Y. 2022), *aff'd*, No. 22-2917-CV, 2023 WL
 7272062 (2d Cir. Nov. 3, 2023) ................................................................................9

*Slamow v. Del Col*,
 79 N.Y.2d 1016 (1992) ..............................................................................................8

*Smith v. Spizzirri*,
 601 U.S. 472 (2024) ................................................................................................11

*Volt Info. Sciences v. Bd. of Trustees*,
 489 U.S. 468 (1989) ................................................................................................11

*Wright v. Universal Mar. Serv. Corp.*,
 525 U.S. 70 (1998) ....................................................................................................9

**Statutes**

Federal Arbitration Act ("FAA") .................................................................... *passim*

Defendants, Manhattan Painting & Decorating Corp. ("MPDC"), Igbale Erbeli ("Erbeli"), and Argjent Erbeli ("Argjent") (collectively referred to herein as "Defendants") respectfully submit this memorandum of law in support of their motion to compel arbitration and stay proceedings pending individual arbitration in response to the Complaint filed on behalf of Plaintiff Daniel Andrade ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff, a former employee of MPDC, brings this putative class action on behalf of himself and others similarly situated to recover allegedly agreed-upon wages, alleged underpayment of overtime compensation and other alleged damages. However, at all relevant times, wages and other terms and conditions of Plaintiff's employment with MPDC, and those of other putative collective and class action members, were determined pursuant to two collective bargaining agreements, in effect from May 1, 2019, through April 30, 2028. Specifically, the Trade Agreement between District Council No. 9, Internation Union of Painters and Allied Trades ("I.U.P.A.T."), AFL-CIO (collectively referred to as the "Union") and the Association of Master Painters and Decorators of New York, Inc. (the "Association"), among others, was in effect from May 1, 2019 to April 30, 2024 (the "Trade Agreement"). A successor Trade Agreement, effective May 1, 2024, extends to April 30, 2028 (the "Successor Trade Agreement," and together with the Trade Agreement, the "Trade Agreements"). At all relevant times, MPDC has been and remains an Associate Employer covered thereunder.

The Trade Agreements provide a clear mechanism and process in place for reporting alleged violations, which culminates in the Joint Trade Committee and Joint Trade Board hearing and deciding claims in arbitration. In complete disregard for the grievance and arbitration procedures of the Trade Agreements, Plaintiff, individually, and on behalf of all others similarly situated, now files this Class and Collective Action Complaint (the "Complaint") against

Defendants alleging wage and payment law violations and retaliation under the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL") more than a year following his separation of employment. *See* Declaration of Ross A. Fox ("Fox Decl."), **Exhibit A.**

The terms of the Trade Agreements require employees to exhaust their grievance and arbitration procedures before commencing an action in any other forum for any alleged violations of their provisions.

Accordingly, Plaintiff's claims should be compelled to arbitration, as they all arise out of alleged wage and payment violations and but for retaliation under the Trade Agreements, and proceedings should be stayed pending individual arbitration.

## STATEMENT OF FACTS

Plaintiff alleges that he was employed by MPDC as a painter and sprayer from approximately May 2021 to March 19, 2024. *See* Fox Decl., **Exhibit A**, at ¶ 94. The Complaint asserts that Plaintiff complained to Defendants on various occasions between April/May 2023 and early March 2024 regarding wage and overtime claims. *Id.* at ¶¶ 108-110, 113. Specifically, around April/May 2023, Plaintiff allegedly complained to Defendants that he was "working past 10:00 p.m. and working more than what the shifts were scheduled for without being properly compensated and not getting paid at the overtime rate of pay." Fox Decl., **Exhibit A**, at ¶ 108. Further, the Complaint states around October 2023, Plaintiff "again complained to Defendants that the policy of paying a flat rate of $200 per shifts was unfair and he needed to be paid at the proper overtime rate of pay." *Id.* at ¶ 109. Moreover, later in October 2023, Plaintiff claims he complained to Argjent that "[Plaintiff] was working late hours and sometimes ending his workday between 12:00 a.m. and 2:00 a.m. [Plaintiff] again complained that he needed to be paid at the proper overtime rate instead of receiving a flat rate per shift." *Id.* at ¶ 110.

Then, around early March 2024, Plaintiff allegedly "complained to Argjent that he no longer wanted to work over 40 hours in a week unless Defendants reported all the hours he worked on his paystub and paid him at the proper overtime rate of pay." *Id.* at ¶ 113. Thereafter, the Complaint states on March 19, 2024, Defendants "abruptly removed him from the schedule" and "in retaliation for [Plaintiff's] repeated complaints." *Id.* at ¶ 114. Subsequently, Plaintiff purportedly "complained to his union representative that he was being retaliated against and the following day made a report at the union hall." *Id.* at ¶ 115.

On May 1, 2019, the Union and the Association, among others, entered into the Trade Agreement, which was in effect to April 30, 2024. *See* Declaration of Igbale Erbeli ("Erbeli Decl."), **Exhibit 1**. On May 1, 2024, the Successor Trade Agreement was entered into and extends to April 30, 2028. *See* Erbeli Decl., **Exhibit 2**. At all relevant times, MPDC has been and remains an Association Employer covered by the Trade Agreements. *See* Erbeli Decl., at ¶ 5, **Exhibit 3**. The Trade Agreements reflect the objective of the Parties "to establish wages and other terms and conditions of employment upon which Journeypersons and appreciations shall work for members of the Associations." Erbeli Decl., **Exhibit 1**, p. 1; **Exhibit 2**, p. 1. The wage and hour provisions of these Trade Agreements include Wages, Art. III, Sec. 1, Overtime and Overtime Permits, Art. IV, Sec. 2(A), Payment of Wages, Art. VIII, Sec. 1, and Wage Statements, Art. VIII, Sec. 4. *See* Erbeli Decl., **Exhibits 1 & 2**.

The Trade Agreements set forth a just cause clause providing that "no employee may be discharged or laid-off by any Association Employer except for just cause." Erbeli Decl., **Exhibits 1**, p. 3**; Exhibit 2**. p. 3. The Trade Agreements also provide a grievance procedure under which the "Joint Trade Committee and the Joint Trade Board are empowered to hear and decide in arbitration as hereinafter provided, all grievances and disputes which arise between the Parties as

3

to the interpretation or application of this Trade Agreement and to make such awards or assess remedies, damages and penalties for violation of this Trade Agreement." Erbeli Decl., **Exhibits 1**, p. 23**; Exhibit 2**. p. 25. If a grievance is not resolved earlier, this grievance procedure culminates in arbitration by the Joint Trade Committee, and the "rendering [of] an award which may include the imposition of fines and/or penalties, and any statutory remedies under the National Labor Relations Act or other applicable Law and Rules." Erbeli Decl., **Exhibits 1**, p. 27; **Exhibit 2**. p. 28-29. Also, "[t]he grievance and arbitration procedures of Article XIII of the Trade Agreement[s] must be exhausted before the employee may individually commence an action in any other forum to remedy any alleged violation of [the] Trade Agreement[s]." Erbeli Decl., **Exhibits 1**, p. 19**; Exhibit 2**. p. 21. Specifically, Article IX, Section 1(C)(d) states that following:

> No Retaliation. There shall be no retaliation by the Employer against any employee who reports to the Union any alleged violation of this Trade Agreement. **The employee must report the violation to the Union within fourteen (14) days of the date of the occurrence of the violation**. The Union must file a grievance on said violation in accordance with Article XIII of this Trade Agreement within thirty (30) days of the date it receives the complaint from the employee. **The grievance and arbitration procedures of Article XIII of the Trade Agreement must be exhausted before the employee may individually commence an action in any other forum to remedy any alleged violation of this Trade Agreement**.

*Id.* (emphasis added).

Despite the Trade Agreements' wage and overtime provisions, Plaintiff does not allege in the that he raised any grievances regarding his wage and hour allegations. *See generally* Fox Decl., **Exhibit A**. To the knowledge of Defendants, Plaintiff did not do so. *See* Erbeli Decl., at ¶ 7.

Plaintiff brings forth this Complaint on behalf of two classes: the FLSA Collective and the NYLL Class. *See generally* Fox Decl., **Exhibit A**. The FLSA Collective is defined as "[a]ll current and former Non-Exempt Workers employed by Manhattan Painting between August 8, 2022 and

4

the date of final judgment in this matter, who elect to opt-in to this action." Fox Decl., **Exhibit A.**, at ¶ 71. The NYLL Class is defined as "[a]ll current and former Non-Exempt Workers at Manhattan Painting between December 23, 2017 and the date of the final judgment in this matter." *Id.* at ¶ 85. "Non-Exempt Workers" are defined as painters, sprayers, and laborers who work or have worked for Defendants. *See id.* at ¶ 1.

In the Complaint, Plaintiff alleges the following claims against Defendants: (1) failure to pay Plaintiff, the FLSA Collective, and NYLL Class the premium overtime wages which they were entitled under FLSA and NYLL; (2) failure to provide Plaintiff and the NYLL Class proper time of hire wage notices as required by NYLL; (3) failure to supply Plaintiff and the NYLL Class with an accurate statement of wages with every payment as required by NYLL; and (4) retaliation in violation of FLSA and NYLL. *See generally* Fox Decl., **Exhibit A**. Since all these allegations fall within and/or relate to the purviews of "any alleged violation of the Trade Agreement[s]," they are subject to the grievance and arbitration procedures agreed to by the parties under the Trade Agreements. Erbeli Decl., **Exhibits 1**, p. 19**; Exhibit 2**. p. 21.

Accordingly, Plaintiff's Complaint must be compelled to arbitration and proceedings must be stayed pending individual arbitration.

## LEGAL ARGUMENT

## I.    THE FEDERAL ARBITRATION ACT MANDATES THIS COURT TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., mandates that courts compel arbitration of claims that parties have agreed to arbitrate. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (finding that the FAA reflects a liberal policy favoring the enforcement of arbitration agreements). Indeed, Section 2 of the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy

thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . ..” “[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.” *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

“[F]ederal policy requires [courts] to construe arbitration clauses as broadly as possible.” *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991)). Thus, courts will compel arbitration “unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.” *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986). However, “[A] party resisting arbitration bears the burden of proving that [it is] unsuitable for arbitration.” *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

The grievance and arbitration procedures of the Trade Agreements at issue are clearly governed by the FAA as they are contained in a contract “evidencing a transaction involving commerce.” *See, e.g.*, *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (interpreting the term “involving commerce” to be used as broadly as possible and the functional equivalent of “affecting commerce”). Plaintiff was allegedly employed by MPDC from approximately May 2021 through March 19, 2024, and his work in exchange for compensation involves commerce sufficient for the FAA to apply. Under the Trade Agreements, Plaintiff was prohibited from commencing this Action until the grievance and arbitration procedures were exhausted: an “employee must report the [alleged] violation [of the Trade Agreement] to the Union within fourteen (14) days of the date of the occurrence of the violation.” Erbeli Decl., **Exhibits 1**, p. 19**; Exhibit 2**. p. 21. Plaintiff failed

to exhaust, or even invoke, the collectively bargained grievance procedure, despite having countless opportunities to do so from April 2023 to March 2024. *See* Complaint at ¶¶ 108-114.

## II.    PLAINTIFF MUST RESOLVE HIS CLAIMS THROUGH INDIVIDUAL ARBITRATION

To determine whether parties have contractually bound themselves to an arbitration clause, courts in the Second Circuit consider: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221-22 (2d Cir. 2019) (external citations omitted). "In answering these questions, courts are mindful of the fact that the Federal Arbitration Act espouses 'a liberal federal policy favoring arbitration agreements,' reflecting Congress's 'recognition of the desirability of arbitration as an alternative to the complications of litigation.'" *Pena v. 220 E. 197 Realty LLC*, No. 20-CV-7039 (JPO), 2021 WL 3146031 (S.D.N.Y. July 23, 2021), at *1 (quoting *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988)) (internal quotation marks and citation omitted).

For the reasons below, each inquiry favors compelling Plaintiff to arbitrate his claims for the reasons set forth herein.

### A.    The Parties Intended to Arbitrate the Claims.

The Second Circuit looks to "state contract law principles" to determine whether the parties agreed to arbitrate. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016); *see also M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) ("We interpret collective-bargaining agreements ... according to ordinary principles of contract law . . ..."). Under New York law, agreements must be "construed in accord with the parties' intent." *Greenfield v. Philles Records,*

*Inc.*, 98 N.Y.2d 562, 569 (2002) ("A written agreement that is complete, clear[,] and unambiguous on its face must be enforced according to the plain meaning of its terms."); *see also Slamow v. Del Col*, 79 N.Y.2d 1016, 1018 (1992) ("The best evidence of what parties to a written agreement intend is what they say in their writing"). "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Greenfield*, 98 N.Y.2d at 569 (quoting *Breed v Insurance Co. of N. Am.,* 46 N.Y.2d 351, 355 (1978), *rearg denied*, 46 N.Y.2d 940 (1979)). Thus, "if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Id.* at 569-70.

Pursuant to Article IX, Section 1(C)(d) of the Trade Agreements, "[t]he grievance and arbitration procedures of Article XIII of the Trade Agreement[s] must be exhausted before the employee may individually commence an action in any other forum to remedy any alleged violation of [the] Trade Agreement[s]." Erbeli Decl., **Exhibits 1**, p. 19**; Exhibit 2**. p. 21. Indeed, the Trade Agreements' express unambiguous language clearly identifies the forum and procedure for arbitration, and identifies the claims that will be subject to arbitration. Therefore, the parties expressly agreed to arbitration, thereby waiving their rights to litigation in this Court.

**B.      The Scope of the Arbitration Agreement Plainly Encompasses Plaintiff's Claims.**

In terms of the scope of the arbitration agreement, the Second Circuit normally resolves "any doubts ... in favor of arbitration." *Abdullayeva*, 928 F.3d at 222 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "This presumption in favor of arbitrability comes from the Federal Arbitration Act, which 'direct[s] courts to abandon their

hostility' toward arbitration and to instead 'respect and enforce agreements to arbitrate.'" *Id.* (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505-06 (2018)).

Yet, "an exception to the scope presumption applies in the context of a union's waiver of its members' right to bring statutory claims in court." *Id.* In fact, "the Supreme Court has held that a union can 'agree to the inclusion of an arbitration provision in a collective-bargaining agreement' on behalf of its members." *Id.* (quoting *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009). Also, "[c]laims under Section 1981, Title VII, the NYSHRL, the FLSA, and NYLL may be made subject to arbitration." *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016). However, "[a] union-negotiated CBA cannot waive rights to bring a federal statutory claim in a judicial forum unless that waiver is clear and unmistakable." *Fernandez v. Windmill Distrib. Co.,* 159 F. Supp. 3d 351, 359 (S.D.N.Y. 2016) (citing *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998)).

"A 'clear and unmistakable' waiver exists where one of two requirements is met: (1) if the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration; or (2) where the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes." *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461, 469 (S.D.N.Y. 2010). Therefore, an operative contract need not specifically identify the statutes at issue to waive the right to a judicial forum. *See Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 366-68 (S.D.N.Y. 2022), *aff'd*, No. 22-2917-CV, 2023 WL 7272062 (2d Cir. Nov. 3, 2023) (collecting cases). Ultimately, the "clear and unmistakable" standard "ensures that employees' right to bring statutory claims in court is not waived by operation of confusing, 'very general' arbitration clauses." *Abdullayeva*, 928 F.3d at 223. *See, e.g.*, *Wright*, 525 U.S. 70, 80 (1998) (quoting *Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708

(1983) ("[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'").

Here, the claims brought by Plaintiff, which essentially relate to wage and payment violations and retaliation but for such alleged violations against Defendants under the FLSA and NYLL, are unequivocally contemplated by the grievance and arbitration procedures of the Trade Agreements. All of Plaintiff's allegations arise out of the fact that there were alleged violations of the Trade Agreements. However, the parties expressly agreed that the grievance and arbitration procedures of Article XIII of the Trade Agreements "must be exhausted before the employee may individually commence an action in any other forum to remedy **any alleged violation of this Trade Agreement[s].**" Erbeli Decl., **Exhibits 1**, p. 19**; Exhibit 2**. p. 21 (emphasis added). Further, the parties, through Article XIII, empowered the Joint Trade Committee with the ability to render an award which "may include the imposition of fines and/or penalties, and **any statutory remedies available under the National Labor Relations Act or other applicable Laws and Rules**." Erbeli Decl., **Exhibits 1**, p. 27; **Exhibit 2**. p. 28-29 (emphasis added).

The waiver of rights to bring statutory claims in the Trade Agreements is "clear and unmistakable" because their robust grievance and arbitration procedures undoubtedly require Plaintiff to exhaust arbitration before individually commencing an action in court. Indeed, they use plain and direct language to confirm that "any alleged violation of th[e] Trade Agreement[s]," which include Plaintiff's wage and hour and retaliation claims, will be subject to arbitration. Erbeli Decl., **Exhibits 1**, p. 19**; Exhibit 2**. p. 21. As such, the construction of the Trade Agreements derail Plaintiff's ability to be confused about waiving his rights to bring statutory claims in court. *Abdullayeva*, 928 F.3d at 223.

    **C.**    **All of Plaintiff's Claims are Arbitrable and the Complaint Should be Compelled to Arbitration.**

As articulated in detail above, claims under FLSA and NYLL are arbitrable. *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016). Since all of Plaintiff's allegations against Defendants are alleged violations of FLSA and NYLL, all of Plaintiff's claims are arbitrable. Thus, the third and fourth factors of the Second Circuit's inquiry are both satisfied here. Accordingly, Plaintiff should be bound by the grievance and arbitration procedures of the Trade Agreements.

**III.**    **PLAINTIFF'S CLASS AND COLLECTION ACTION CLAIMS CANNOT PROCEED**

The Court should also order the parties to arbitrate Plaintiff's claims exclusively on an individual basis. Section 4 of the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4. Similarly, Section 3 of the FAA authorizes federal courts to stay litigation until the arbitration has been conducted "in accordance with the terms of the [parties' arbitration] agreement…." 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (ruling the "plain statutory text" of Section 3 "requires a court to stay the proceeding").

"The FAA's central purpose is to ensure 'that private agreements to arbitrate are enforced according to their terms.'" *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 52 (1995) (quoting *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 479 (1989)). Further, the Supreme Court has made clear that "parties generally are free to structure their arbitration agreements as they see fit," "may limit by contract the issues which they will arbitration," and "so too may they specify by contract the rule sunder which that arbitration will be conducted." *Volt Info. Sciences*, 489 U.S. at 479 (internal citation omitted).

11

Here, the parties did not agree to class or collective arbitration. Instead, the grievance and arbitration procedures of the Trade Agreements apply solely to individual employees. *See* Erbeli Decl., **Exhibits 1**, p. 19**; Exhibit 2**. p. 21. Accordingly, the Court should enforce the Trade Agreements as written and send Plaintiff's individual claims to arbitration.

## <u>CONCLUSION</u>

In light of the foregoing, Defendants respectfully request this Court to compel Plaintiff's claims to arbitration and stay proceedings pending individual arbitration.

Dated: November 11, 2025
      New York, New York

                **A.Y. STRAUSS LLC**

By: _____
                    Ross A. Fox, Esq.
                    Ira M. Saxe, Esq.
                    Anthony J. Crasto, Esq.
                    535 Fifth Avenue, Fourth Floor
                    New York, NY 10017
                    Tel.: (646) 374-0255
                    rfox@aystrauss.com
                    isaxe@aystrauss.com
                    acrasto@aystrauss.com
                    *Attorneys for Defendants*